UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| SHERRY TOMASON, MAURICE BURLEY, ANTONIO POLKE, FRANK WASHINGTON, and others similarly situated | : : : : : |
| Plaintiffs, | : |
| | : **CV613-042** |
| TAMMIE ANTHONY, ERIC COOK, GEORGE FISHER, ANTONIO GAFFNEY, MICHAEL VALDEZ GARCIA, FELICIA MARIE GILLIS, MARVIN GILLIS JR., MICHAEL KENDRICK, BRIAN MARTIN, BRIAN MOBLEY, BRENDA MOULTRIE, NICHOLAS POLKE, LINDA POPE, FELICISA ROGERS,ORLANDO SHELL, and FELICIA WILLIAMS | : : Civil Action No.: _____ : : : : : : : : |
| Opt-in Plaintiffs, | : : : |
| vs. | : : : |
| R.T. STANLEY, J.R., BRIAN STANLEY, VINCE STANLEY, TRACY STANLEY, and STANLEY FARMS, LLC, | : : : : |
| Defendants. | |

## COMPLAINT

### PRELIMINARY STATEMENT

1.    Plaintiffs are migrant and seasonal farm workers who worked for Defendants' farm

operations in and around Toombs County in 2010, 2011, and 2012. Plaintiffs were

paid for their planting and harvesting work on a piece-rate basis and their wages

were not supplemented to meet minimum wage. Plaintiffs were also offered less

compensation than the Hispanic, foreign workers they worked alongside. Plaintiffs

bring claims under the Fair Labor Standards Act, the Migrant and Seasonal

Agricultural Workers Protection Act, and 42 U.S.C. § 1981, and Georgia contract

law to correct these unlawful employment practices.

2.   Plaintiffs seek their lost and unpaid wages; liquidated damages; actual, incidental,

consequential, compensatory damages, and punitive damages; pre- and post-

judgment interest, reasonable attorneys' fees and costs, and declaratory and

injunctive relief.

## I.   JURISDICTION AND VENUE

3.   This Court has jurisdiction of this action pursuant to:

    a.   28 U.S.C. § 1331 (Federal Question);

    b.   29 U.S.C. § 1337 (Interstate Commerce);

    c.   29 U.S.C. § 1854(a) (AWPA); and

    d.   28 U.S.C. § 1343 (Civil Rights).

4.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), 29 U.S.C. § 1854(a),

and S.D. Ga. Local Rule 2.1, because a substantial part of the claims arose in the

Southern District of Georgia and because the Defendants reside there.

5.   This Court is empowered to grant declaratory relief pursuant to 28 U.S.C. §§ 2201

and 2202.

## II.   PARTIES

6.   Plaintiffs Maurice Burley and Antonio Polke and Opt-in Plaintiffs Tammie Anthony,

George Fisher, Antonio Gaffney, Felicia Gillis, Marvin Gillis, Brian Martin, Brian

Mobley, Brenda Moultrie, Nicholas Polke, Linda Pope, Felicisa Rogers, Orlando

Shell, and Felicia Williams are of United States national origin and citizenship

(American) and African-American (black) and were seasonal agricultural worker as defined by the AWPA. 29 U.S.C. § 1802(10)(A).

7.    Opt-in Plaintiff Michael Garcia is of United States national origin and citizenship (American) and Hispanic and was a seasonal agricultural worker as defined by the AWPA. 29 U.S.C. § 1802(10)(A).

8.    Plaintiff Sherry Tomason and Opt-in Plaintiffs Eric Cook, Michael Kendrick, and Brian Martin and are of United States national origin and citizenship (American) and Caucasian (white) and were seasonal agricultural worker as defined by the AWPA. 29 U.S.C. § 1802(10)(A).

9.    Plaintiff Frank Washington is of United States national origin and citizenship (American) and African-American (black) and was a migrant agricultural worker as defined by the AWPA for the 2010 and 2011 seasons and a seasonal agricultural worker for the 2012 season. 29 U.S.C. § 1802(8)(A) and 1802(10)(A).

10.   Plaintiffs' consents to sue are attached as Exhibit A.

11.   Defendants are individuals residing in or around Lyons, Georgia.

12.   Defendant R.T. Stanley, Jr., is a member of Defendant Stanley Farms, LLC, and may be served with process at 288 Stanley Lodge Drive, Lyons, GA 30436.

13.   Defendant Brian Stanley is a member of Defendant Stanley Farms, LLC, and may be served with process at 251 Bud Clifton Road, Lyons, GA 30436.

14.   Defendant Vince Stanley is a member of Defendant Stanley Farms, LLC, and may be served with process at 285 Mallard Pt. Lyons, GA 30436.

15.   Defendant Tracy Stanley is a member of Defendant Stanley Farms, LLC, and may be served with process at 231 Stanley Retreat Drive, Lyons, GA 30436.

3

16.   Defendant Stanley Farms, LLC may be served with process through its registered agent, Defendant R.T. Stanley, Jr.

17.   Defendants employed Plaintiffs Maurice Burley, Antonio Polke, Sherry Thomason, and Frank Washington and Opt-in Plaintiffs Brenda Moultrie and Nicholas Polke in the 2010 spring onion harvest season.

18.   Defendants employed Plaintiffs Maurice Burley, Sherry Tomason, and Frank Washington in the 2010 fall onion planting season.

19.   Defendants employed Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington and Opt-in Plaintiffs Tammie Anthony, Brian Martin, Brian Mobley, Nicholas Polke, Linda Pope, Orlando Shell, and Felicia Williams in the 2011 spring onion harvest season.

20.   Defendants employed Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington and Opt-in Plaintiffs George Fisher, Michael Garcia and Brian Martin in the 2011 fall onion planting season.

21.   Defendants employed Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington and Opt-in Plaintiffs Eric Cook, Antonio Gaffney, Felicia Gillis, Marvin Gillis, Michael Kendrick, Brian Martin, Brian Mobley, Linda Pope, and Felicisa Rogers in the 2012 spring onion harvest season.

22.   Defendants employed Plaintiff Frank Washington and Opt-in Plaintiffs Tammie Anthony and Brian Mobley in the 2012 summer watermelon and/or sweet potato season.

4

23.    Defendants employed Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington and Opt-in Plaintiff Michael Garcia in the 2012 fall onion planting season.

24.    At all times relevant to this action, Defendants had the power to hire and fire Plaintiffs and had control over their conditions of employment.

25.    Defendants hired crewleaders who recruited and supervised Plaintiffs and others similarly situated.  During the relevant time periods the Defendants employed as crewleaders Ramon and Joe Quintero, Henry Hinojosa, Joel Salgado, and Jose Barco.

26.    Defendants determined the amount of harvesting to be done each day and determined the start time at which harvesting could begin.

27.    Defendants own or lease the property on which Plaintiffs worked.

28.    Defendants determine wages by setting the rate at which crewleader can pay on the piece rate.

29.    Defendants advance money to the crewleader because they are not financially self-sustaining businesses.

30.    Defendants supplied tools and supplies to the crewleaders either directly or through advancing money for the purchase of tools and supplies.

31.    Defendants prepare the payroll, including paystubs, and pay the workers.

32.    Planting and harvesting onions and other produce was an integral part of the Defendants business of growing, marketing and selling produce.

33.    Defendants were employers within the definition of the Fair Labor Standards Act because they suffered or permitted Plaintiffs and others similarly situated to work

5

and Plaintiffs and others similarly situated were dependent on them for their wages as a matter of economic reality.

34.    Defendants were agricultural employers within the meaning of 29 U.S.C. § 1802 because they owned or operated a farm and hired and employed migrant and seasonal farm workers.

35.    Defendants were employers as defined by the H-2A regulations, 20 C.F.R. § 655.103(b), of H-2A workers and workers in corresponding employment, including Plaintiffs and others similarly situated, because they had a place of business in the U.S., a means to be contacted for employment, had the ability to control the work of H-2A workers, Plaintiffs, and others similarly situated, and had a valid Federal Employer Identification Number.

36.    Defendants R.T. Stanley, Vince Stanley, Brian Stanley, and Tracy Stanley are day-to-day managers with operational control over the agricultural operations doing business as Stanley Farms.

37.    At all times relevant to this action, Defendants were engaged in the packing and production of produce in and around Toombs County, Georgia, for sale in interstate commerce.

### III.    THE H-2A PROGRAM AND PLAINTIFFS' EMPLOYMENT CONTRACTS

38.    An agricultural employer in the United States may import H-2A workers if the United States Department of Labor ("U.S. DOL") certifies that (1) there are not enough U.S. workers to perform the job and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1). These

provisions, along with the implementing regulations, are commonly referred to as the "H-2A program."

39. Employers requesting H-2A workers must file a temporary labor certification application with the U.S. DOL's Employment and Training Administration. 20 C.F.R. § 655.130. The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. § 655.122 and 20 C.F.R. § 653.501. 20 C.F.R. § 655.121(a)(3). The job order contains the terms to be offered to both foreign H-2A workers and U.S. workers. *See* 20 C.F.R. § 655.122(a).

40. A job order must contain all material terms and conditions of employment and is reviewed by the state and federal DOL to ensure the terms offered are the prevailing terms in the industry. 20 C.F.R. § 653.501(d)(3) and (4).

41. Where an agricultural employer seeks foreign workers under the H-2A program, the terms of the job order establish the minimum terms and conditions for employment for all agricultural workers similarly employed.

42. To receive H-2A workers, housing must be provided at no cost to H-2A workers and those workers in corresponding employment who are not reasonably able to return to their residence within the same day. 20 C.F.R. § 655.122(d).

43. An employer using H-2A workers must offer U.S. workers no less than the same benefits, wages, and working conditions that it offers to H-2A workers and must not impose any restrictions or obligations on U.S. workers that it does not impose on H-2A workers. 20 C.F.R. § 655.122(a).

44. At all times relevant to this action, Plaintiffs were "U.S. workers" as defined by 20 C.F.R. § 655.103(b).

45.     The 2010 job orders offered a wage of $9.11 per hour. The 2011 job orders offered a
        wage rate of $9.12 per hour.  The 2012 job orders offered a wage rate of $9.39 per
        hour.

## IV.     STATEMENT OF FACTS

46.     In each season relevant to this complaint, Defendants imported at least 39 Hispanic
        workers of Mexican national origin ("Mexican workers") under H-2A job orders for
        planting and harvesting vegetables.

47.     For the Fall 2010 season, Defendant R.T. Stanley, Jr. signed a letter supporting an
        application for H-2A workers by crewleader Jose L. Barco and indicating the intent
        to contract Mr. Barco and his workers 40 workers for the time period October 25,
        2010 through December 31, 2010. The letter became part of job order number
        GA7878404 for the period October 25, 2010 to December 31, 2010.  A copy of the
        Fall 2010 job order is attached as Exhibit B.

48.     Defendants also provided the housing for the job order fulfilling a necessary
        requirement for crewleader Jose Barco to be able to receive H-2A workers.

49.     Plaintiffs Maurice Burley, Sherry Tomason, and Frank Washington worked
        alongside the Fall 2010 H-2A workers on Defendants' farm but were not offered the
        preferable wage rate available under the H-2A job order in violation of 20 C.F.R. §
        655.122(a).

50.     For the Spring 2011 season, Defendant R.T. Stanley, Jr. signed a letter supporting an
        application for H-2A workers by crewleader Jose L. Barco and indicating the intent
        to contract Mr. Barco and his workers.  The letter became part of job order number

GA 7916391 requesting 44 workers for the period April 1, 2011, to June 15, 2011. A copy of the Spring 2011 job order is attached as Exhibit C.

51. Defendants also provided the housing for the job order fulfilling a necessary requirement for crewleader Jose Barco to be able to receive H-2A workers.

52. Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington and Opt-in Plaintiffs Tammie Anthony, Brian Martin, Brian Mobley, Nicholas Polke, Linda Pope, Orlando Shell, and Felicia Williams worked alongside the Spring 2011 H-2A workers on Defendants' farm but were not offered the preferable wage rate available under the H-2A job order in violation of 20 C.F.R. § 655.122(a).

53. For the Fall 2011 season, Defendant R.T. Stanley, Jr. signed a letter supporting an application for H-2A workers by labor contractor Jose L. Barco. The letter indicated the intent to employ Mr. Barco and 39 of his workers from September 15, 2011 to January 15, 2012. The letter was incorporated into job order GA7961898 which requested 99 foreign workers for the time period September 15, 2011 until January 15, 2012. The job order was submitted under the name Jose L. Barco. A copy of this Fall 2011 job order is attached as Exhibit D.

54. Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington and Opt-in Plaintiffs George Fisher, Michael Garcia, and Brian Martin worked alongside the Fall 2011 H-2A workers on Defendants' farm but were not offered the preferable wage rate available under the H-2A job order in violation of 20 C.F.R. § 655.122(a).

55. For the Spring 2012 season, Joel Salgado submitted a job order numbered GA8002291 for the time period April 02, 2012 to July 21, 2012 for 88 foreign

9

workers under the H-2A program. A copy of that Spring 2012 job order is attached as Exhibit E.

56.     Defendant R.T. Stanley, Jr. signed a letter of support indicating the intent to hire Labor Contractor Salgado and 50 of his H-2A workers for the time period April 1, 2012 until July 21, 2012. The letter became part of the job order.

57.     Defendant Stanley Farms was identified as the work site for the Spring 2012 job order.

58.     Defendants also provided the housing for the Spring 2012 job order, described on the job order as "Stanley Dorms." This fulfilled a necessary requirement for crewleader Joel Salgado to be able to receive H-2A workers.

59.     Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington, and Opt-in Plaintiffs Eric Cook, Antonio Gaffney, Felicia Gillis, Marvin Gillis, Michael Kendrick, Brian Martin, Brian Mobley, Linda Pope, and Felicisa Rogers worked alongside the Spring 2012 H-2A workers on Defendants' farm but were not offered the preferable wage rate available under the H-2A job order in violation of 20 C.F.R. § 655.122(a).

60.     For the Summer and Fall of the 2012 season, Joel Salgado submitted a job order GA8025953 for the time period July 22, 2012 to December 31, 2012 for 74 foreign workers under the H-2A program.

61.     Defendant Stanley Farms was identified as the work site and Defendant R.T. Stanley, Jr. signed a letter supporting the application for H-2A workers and indicating he was hiring Joel Salgado and that Mr. Salgado would need 74 workers. The letter became

part of job order number GA 8025953. A copy of the Summer and Fall 2012 job order is attached as Exhibit F.

62.    Defendants also provided the housing for the job order fulfilling a necessary requirement for crewleader Joel Salgado to be able to receive H-2A workers.

63.    Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington and Opt-in Plaintiffs Tammie Anthony, Michael Garcia, and Brian Mobley worked alongside the Summer and Fall 2012 H-2A workers on Defendants' farm but were not offered the preferable wage rate available under the H-2A job order in violation of 20 C.F.R. § 655.122(a).

### Onion Planting and Harvest Seasons

64.    Plaintiffs were transported to and from work in the Defendants' onion fields by crewleaders Joaquin "Joe" Quintero or Ramon Quintero.

65.    The Quinteros were engaged by the Stanley Defendants to recruit and transport agricultural workers for a fee. Neither crewleader Quintero was a licensed by the U.S. Department of Labor as a farm labor contractor nor were they authorized to transport workers. Additionally, crewleader Joe Quintero lacked a state-issued driver's license.

66.    The vehicle crewleader Joe Quintero used to transport workers did not have seats and seatbelts for each worker, causing some workers to ride to work on upturned buckets with no seatbelts.

67.    Crewleader Ramon Quintero transported workers in an open-bed pickup truck and often had workers ride in the back of the truck with no seats or seatbelts.

11

68.     Plaintiffs were compensated on a piece-rate basis, being paid based on the number of feet they planted in the planting season and the number of buckets they filled in the harvest season.

69.     In the harvest season Plaintiffs received a token for each bucket of onions they picked. At the end of the day Defendants' crewleaders counted each Plaintiff's tokens less any tokens used to purchase beverages and food and based his or her pay on the number of tokens earned in a week.

70.     Plaintiffs were only paid by the piece-rate regardless of the number of hours they worked, and their pay was not supplemented to average either the federal minimum wage or the job order wage rate when necessary to meet the applicable minimum wage.

71.     Failing to supplement piece-rate wages resulted in Plaintiffs, Opt-in Plaintiffs, and others similarly situated receiving less than the average of the federal minimum wage and the job order wage rate for all hours worked.

72.     Plaintiffs' wages were reduced further below applicable minimum wages when they were not compensated for time spent waiting for onions to dry in the morning during the onion harvest seasons.

73.     In the 2010 and 2011 seasons, Defendants did not provide Plaintiffs with paystubs that detailed their hours worked.

74.     Defendants occasionally provided weekly hours on 2012 paystubs but those records failed to record all hours worked and paystubs were inaccurate.

75.     Plaintiffs worked planting in onion fields that had recently been sprayed with pesticides.

12

76.   Defendants' crewleaders, supervisors, and relatives sold food, drinks, alcohol, and cigarettes in the fields to Plaintiffs in violation of law and or at above actual cost.

77.   In the harvest season, Plaintiffs could pay for their purchases in the fields as described in Paragraphs 76 with the tokens they received to keep track of their buckets and receive payment.

78.   Plaintiffs were required to purchase tools, including clippers and files, for their work harvesting onions.

79.   The deductions described in Paragraphs 76 through 788 brought Plaintiffs' wages further below minimum wage.

80.   Plaintiffs were engaged in corresponding employment with the H-2A workers and worked in the same fields performing the same tasks as H-2A workers.

81.   Defendants offered H-2A workers the applicable AEWR wage, as detailed in Paragraphs 45 through 62, and did not offer this wage to Plaintiffs.

82.   Defendants knew their Fair Labor Standards Act obligations and had been previously investigated for violations of the Fair Labor Standards Act by the U.S. Department of Labor.

83.   Plaintiffs sought to resolve the claims informally prior to filing suit.

Summer Watermelon and Sweet Potato Seasons

84.   Plaintiffs were transported to and from Defendants' watermelon and sweet potato fields by crewleader Eddie Lewis Jorden in a school bus.

85.   crewleader Jorden is not a licensed by the U.S. Department of Labor as a farm labor contractor nor authorized to transport workers.

86.     On information and belief, the driver of crewleader Jorden's school bus described in
        Paragraph 83 was not authorized to transport workers by the U.S. Department of
        Labor.

87.     Plaintiffs were compensated on a piece-rate basis harvesting watermelons, paid
        based on the number of trucks the crew filled, divided by the number of people in the
        crew.

88.     Plaintiffs' wages were below minimum wage because their pay was not
        supplemented to ensure they received an average of the applicable minimum wage
        for all hours worked in a workweek.

89.     Plaintiffs were paid in cash and were not provided paystubs that detailed their days
        or hours worked.

90.     Defendants' supervisors and / or relatives sold items to Plaintiffs in the fields,
        including food, drinks, and cigarettes at prices that included a profit for Defendants'
        supervisors.

91.     Plaintiffs' purchase of food, drinks, and/or cigarettes further reduced their wages
        below minimum wage.

92.     Labor Contractor Jorden through an agent recruited and transported Plaintiff Frank
        Washington to Lyons, Georgia from South Carolina prior to the 2010 season.

93.     Labor Contractor Jorden recruited and transported Plaintiff Frank Washington from
        Florida to Georgia prior to the 2011 season.

94.     Neither Defendants nor their Labor Contractor Jorden provided Plaintiff Frank
        Washington with a written description of the terms and conditions of the job at the
        time of his recruitment.

## COUNT I

### AWPA WAGES & WORKING ARRANGEMENT

95.     Plaintiffs incorporate each of the allegations contained in Paragraphs 1 through 94
        above by reference.

96.     This Count sets forth claims for monetary damages, declaratory relief, and injunctive
        relief by Plaintiffs against all Defendants for their violations of the Migrant and
        Seasonal Agricultural Worker Protection Act ("AWPA").

97.     Plaintiffs Maurice Burley, Antonio Polke, Sherry Thomason, and Frank Washington
        and Opt-in Plaintiffs Brenda Moultrie and Nicholas Polke assert this claim for 2010
        spring season.

98.     Plaintiffs Maurice Burley, Sherry Tomason, and Frank Washington assert this claim
        for the 2010 fall season.

99.     Plaintiffs Maurice Burley, Sherry Tomason, and Frank Washington and Opt-in
        Plaintiffs Tammie Anthony, Brian Martin, Brian Mobley, Antonio Polke, Nicholas
        Polke, Linda Pope, Orlando Shell, and Felicia Williams assert this claim for the 2011
        spring season.

100.    Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington
        and Opt-in Plaintiffs George Fisher, Michael Garcia and Brian Martin assert this
        claim for the 2011 fall season.

101.    Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington
        and Opt-in Plaintiffs Eric Cook, Antonio Gaffney, Felicia Gillis, Marvin Gillis,
        Michael Kendrick, Brian Martin, Brian Mobley, Linda Pope and Felicisa Rogers
        assert this claim for the 2012 spring season.

102.    Plaintiff Frank Washington and Opt-in Plaintiffs Tammie Anthony and Brian
        Mobley assert this claim for the 2012 summer season.

103.    Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington
        and Opt-in Plaintiff Michael Garcia assert this claim for the 2012 fall season.

104.    The working arrangement between Plaintiffs and Defendants included both express
        and implied terms. Among those terms implied were that the job would not be in
        violation of existing employment laws including the requirement that U.S. workers
        not be employed on terms less than those offered to foreign workers. 20 C.F.R. §
        655.122(a). The working arrangement also incorporated express terms laid out in the
        job orders prepared for labor contractors Jose Barco and Joel Salgado describing
        work at Defendants' operations in Paragraphs 46 through 63 above constituted a
        working arrangement between the Defendants and the Plaintiffs within the meaning
        of the AWPA, 29 U.S.C. § 1822(c) and 1832(c) and its interpreting regulations, 29
        C.F.R. § 500.72.

105.    As set forth in Paragraphs 45 through 94, the Defendants violated the AWPA by:

        a.      Failing to provide required disclosures to migrant agricultural workers,
        including Plaintiff Washington;

        b.      Failing to provide paystubs or providing paystubs with incomplete or
        inaccurate pay details in violation of 29 U.S.C. § 1832(c)(2);

        c.      Failing to keep records of all compensable hours worked in violation of 29
        U.S.C. § 1831(c);

16

      d.      failing to pay the Plaintiffs' wages when due by failing to pay the job order wage rate for all compensable hours worked in violation of 29 U.S.C. § 1822(a) and 1832(a);

      e.      failing to take reasonable steps to determine that labor contractors were properly licensed for the activities for which they were engaged in violation of 29 U.S.C. § 1842;

      f.      using or causing to be used transportation that was uninspected, unsafe, driven by unlicensed drivers, and not properly insured in violation of 29 U.S.C. § 1841(b); and

      g.      Violated the AWPA working arrangement, 29 U.S.C. §1832(c), by failing to pay the wages contractually promised in the H-2A job order.

106.     The violations of the AWPA working arrangement were without justification.

107.     The violations of the AWPA and its attendant regulations set forth in this Count were the natural consequences of the conscious and deliberate actions of the Defendants and were intentional within the meaning of the AWPA.

108.     As a result of Defendants' violations of the AWPA and its attendant regulations as set forth in this Count, Plaintiffs have suffered damages in an amount to be determined at trial.

## COUNT II

## FAIR LABOR STANDARDS ACT

109.     Plaintiffs and similarly situated workers who have filed consents to sue in this lawsuit incorporate each of the allegations contained in paragraphs 1 through 94 above by reference.

110.    This Count sets forth a claim by Plaintiffs and others similarly situated for damages
        for Defendants' violations of the FLSA pursuant to 29 U.S.C. § 216(b).

111.    As detailed in paragraphs 68 through 91 above, Defendants failed to pay Plaintiffs,
        and others similarly situated, at least the required average minimum hourly wage for
        every compensable hour of labor performed in a workweek, as required by 29 U.S.C.
        § 206(a).

112.    The violations of the FLSA resulted, in part, from Defendants' failure to provide or
        pay for tools necessary expenses as detailed in paragraph 78 above, which Plaintiffs
        and others similarly situated incurred primarily for the benefit or convenience of
        Defendants prior to or in their first weeks of work.

113.    The violations of the FLSA resulted, in part, from Defendants' failure to augment
        piece rate earnings when those earnings fell below an average of the applicable
        minimum wage for the work week.

114.    The violations of the FLSA resulted, in part, from Defendants' failure to pay
        Plaintiffs for time Plaintiffs were engaged to wait prior to the start of the harvest.

115.    Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA set
        forth in this Count, Plaintiffs and other similarly situated workers are entitled to
        recover the amount of their unpaid wages and an equal amount as liquidated
        damages for each workweek in which they were suffered or permitted to work at
        Defendants' operations and during which they earned less than the applicable
        minimum wage.

116.    Defendants' violations set out in this Count were willful within the meaning of the
        FLSA.

## COUNT III

### DISCRIMINATION IN CONTRACT

117.    Plaintiffs, Opt-in Plaintiffs, and others similarly situated incorporate each of the allegations contained in Paragraphs 1 through 94 above by reference.

118.    Plaintiffs, Opt-in Plaintiffs and others similarly situated, members of a protected class, assert this claim pursuant to 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, against all Defendants.

119.    Defendants intentionally discriminated against Plaintiffs, Opt-in Plaintiffs and others similarly situated in their employment contracts by imposing discriminatory terms of employment and denying them the benefits, privileges, terms, and conditions of the contractual relationship, by assigning work under the H-2A contract only to foreign workers denying Plaintiffs wages provided to the foreign, Hispanic, Mexican workers, based upon Plaintiffs' race and / or lack of alienage in favor of the foreign, Hispanic, Mexican workers as set forth in paragraphs 6 through 9.

120.    Defendants' actions violated the Plaintiffs and Opt-in Plaintiffs' rights to make and enforce contracts and receive full and equal benefit of the law as guaranteed by 42 U.S.C. § 1981.

121.    Plaintiffs' rights under 42 U.S.C. § 1981 to make and enforce contracts were clearly established at the time Defendants discriminated against Plaintiffs and Opt-in Plaintiffs.

122.    Defendants' conduct intentionally and impermissibly favored foreign, Hispanic, Mexican workers over Plaintiffs and Opt-in Plaintiffs in the making and enforcement of employment contracts in violation of 42 U.S.C. § 1981.

123.   As a direct result of Defendants' actions, Plaintiffs and Opt-in Plaintiffs were
       subjected to discriminatory terms and conditions of employment and have suffered
       substantial damages.

124.   Defendants exhibited oppression, malice, gross negligence, willful or wanton
       misconduct, or reckless disregard for the Plaintiffs' civil rights so as to entitle the
       Plaintiffs and Opt-in Plaintiffs to an award of punitive damages to punish Defendants
       for their conduct and to deter Defendants and others like them from such conduct in
       the future.

125.   Plaintiffs and Opt-in Plaintiffs seek all appropriate relief, including back pay,
       declaratory and injunctive relief, attorneys' fees and costs of this action pursuant to
       42 U.S.C. § 1988, and damages, including compensatory and punitive damages, in
       an amount to be determined at trial.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following
relief:

(a) Under Count I:

   1.   Declare that all Defendants have willfully violated the AWPA as specified
   above in paragraphs 95 through 108 above;

   2.   Award Plaintiffs and Opt-in Plaintiffs the greater of his or her actual
   damages or statutory damages of $500 per violation for each violation of the
   AWPA.

   3.   Enjoin all Defendants from further violations of the AWPA.

(b) Under Count II:

20

1. Grant judgment against Defendants and in favor of each Plaintiff and similarly situated worker who has filed a consent to sue this lawsuit in the amount of his or her respective unpaid wages as proved at trial, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b); and

2. Award Plaintiffs and similarly situated workers who have filed consents to sue in this lawsuit their costs and attorneys' fees pursuant to 29 U.S.C. § 216(b).

(c) Under Count III:

1. Grant judgment against all Defendants and in favor of each Plaintiff and Opt-in Plaintiff in the amount of his or her respective back wages as proved at trial, plus prejudgment interest;

2. Appropriate injunctive and declaratory relief, including a permanent injunction enjoining all Defendants, their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in alienage discrimination or race discrimination and any other employment practice which discriminates on the basis of alienage or race;

3. Punitive damages in an amount to be determined at trial;

4. Court costs, including discretionary costs;

5. An award of reasonable attorneys' fees;

(d) Award Plaintiffs pre- and post-judgment interest as allowed by law;

(e) Cast all costs upon Defendants; and

(f) Award Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

Respectfully submitted this _12th day of April, 2013,

__s/ Dawson Morton _
Leah Lotto
Georgia Bar No. 940599
Dawson Morton
Georgia Bar No. 525985
Lisa Krisher
Georgia Bar No. 429762
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:     (404) 463-1623

Attorneys for Plaintiffs