UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

SHERRY TOMASON et al., and others similarly situated,

Plaintiffs,

v.   6:13-cv-42

R.T. STANLEY, JR., et al.,

Defendants.

## ORDER

### I. INTRODUCTION

As the season for sweet onions ends, another onion farm labor dispute begins. Sherry Tomason and the other plaintiffs, all former farm workers at Stanley Farms, allege violations of the Fair Labor Standards Act ("FLSA"), Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), and 42 U.S.C. § 1981 that stem from how Stanley Farms pays the people who pick its produce. *See* ECF No. 1 at 15-20. Now before the Court are (1) Defendants' Motion to Dismiss, ECF No. 15; and (2) Plaintiffs' Motion For Conditional Certification Of A FLSA Collective Action, ECF No. 20; and (3) Plaintiffs' Motion To Amend, ECF No. 42. Although for separate reasons, the Court **GRANTS** all three motions.

### II. BACKGROUND

For purposes of a motion to dismiss, the Court accepts as true all factual allegations in the complaint and construes them in the light most favorable to the Plaintiffs. *See* *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011).

Stanley Farms, owned and operated by the Stanley family, grows, harvests, packs, and distributes Vidalia sweet onions and other produce. ECF No. 1 at 3, 5. "Plaintiffs are migrant and seasonal farm workers who worked for Defendants' farm operations in and around Toombs County in 2010, 2011, and 2012." *Id.* at 1. Some plaintiffs are black, some are white, and some are Hispanic. *Id.* at 2-3. All plaintiffs are American citizens. *Id.*

Other Stanley employees referred to as crew leaders recruited and supervised the farm workers. *Id.* at 9. Although crew leaders physically paid farm workers, Defendants advanced money to the crew leaders for wages and tools, prepared payroll and pay stubs, and determined the wage rates crew leaders could pay farm workers. *Id.*

Many of Defendants' farm workers were American citizens, Plaintiffs included. But in each farm season that Plaintiffs' claims encompass—fall of 2010, and spring and fall of 2011 and 2012, for a total of five seasons—"Defendants [also] imported at least 39 Hispanic workers of Mexican national origin . . . for planting and harvesting vegetables." *Id.* at 8. To employ those migrant Mexican farm workers, crew leaders and Defendants utilized the Department of Labor's H-2A program, *id.*, which provides for temporary employment of alien agricultural workers when (1) insufficient domestic workers are available; and (2) the employment of aliens will not adversely affect the wages and working

conditions of domestic workers. 8 U.S.C. § 1188(a)(1).

An employer's application for H-2A workers, called a "clearance order," must certify that it "describes the actual terms and conditions of the employment being offered [to both H-2A workers and American citizen workers] and contains all the material terms and conditions of the job." 20 C.F.R. § 653.501(d)(3). Of those terms, the wages and working conditions offered cannot fall below those of "similarly employed agricultural workers in the area of intended employment or the applicable Federal or State minimum wage, whichever is higher." *Id.* at (d)(4). Importantly, employers must offer the same wages and working conditions to foreign H-2A workers and American workers. *Id.* at 655.122(a).

For the fall 2010 season, R.T. Stanley, Jr. supported an H-2A application by crew leader Jose Barco for forty farm workers. ECF Nos. 1 at 8; 1-2 at 2. The order anticipated forty hour work weeks and a $9.11 per hour minimum wage rate, to be achieved by paying various piece rates for pull, planting, and salad onions. ECF No. 1-2 at 2. "Plaintiffs Maurice Burley, Sherry Tomason, and Frank Washington worked alongside the Fall 2010 H-2A workers on Defendants' farm but were not offered the . . . wage rate available under the H-2A job order. . . ." ECF No. 1 at 8.

In spring 2011, Stanley, Jr. again supported an H-2A application by Barco, this time for forty-four workers. *Id.* at 8-9. This job order specified a minimum pay rate of $9.11 per hour, once again to be achieved by paying a piece rate for onion clipping and loading and unloading bags of onions. ECF No. 1-3 at 4. Many of the plaintiffs worked alongside the H-2A workers during spring 2011 but Defendants did not offer them "the preferable wage rate available under the H-2A job order." ECF No. 1 at 9.

Fall 2011 and spring and fall 2012 were no different. Defendants contracted with a crew leader to provide H-2A workers, supported an H-2A clearance order, obligated themselves to pay a particular wage to both American and H-2A workers, then failed to pay that wage to Plaintiffs. *See id.* at 9-11.

Plaintiffs brought this suit on April 12, 2013, alleging violations of the FLSA, AWPA, and § 1981, all based primarily on Defendants' failure to pay non-H-2A workers the same wages as H-2A workers. *See id.* at 15-20. Defendants answered and then filed a motion to dismiss Plaintiffs' § 1981 claims for (1) failure to allege sufficient facts and (2) because § 1981 will not support a claim for discrimination in contract based on national origin. *See* ECF No. 15-1 at 4, 7. Unrelated to Defendants' motion to dismiss, Plaintiffs have also filed (1) a motion to conditionally certify their FLSA claims as a collective action, ECF No. 20; and (2) a motion to amend their complaint. ECF No. 42.

### III. STANDARD OF REVIEW FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) requires complaints to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations," it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

As noted, courts must "take all of the factual allegations in [a] complaint as true," but those allegations must raise "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). Indeed, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability," it falls short of stating a claim for relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

## IV. DISCUSSION

The Court's analysis proceeds in three parts. First, the Court evaluates Defendants' motion to dismiss Plaintiffs' claims of discrimination in contract. ECF No. 15. Second, the Court addresses Plaintiffs' motion for conditional certification of an FLSA collective action. ECF No. 20. And third, the Court addresses Plaintiffs' motion to amend. ECF No. 42.

### A. 42 U.S.C. § 1981

Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts . . . as is enjoyed by white citizens." The phrase "[m]ake and enforce contracts . . . includes . . . the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Plaintiffs' § 1981 claims allege that "Defendants intentionally discriminated against Plaintiffs . . . in their employment contracts by . . . denying Plaintiffs wages provided to the foreign, Mexican workers, based upon Plaintiffs' race and/or lack of alienage." ECF No. 1 at 19. Defendants contend that Plaintiffs (1) fail to support that allegation with factual details; and (2) plead only national origin discrimination, which § 1981 does not protect against. ECF No. 15-1 at 6-7. Because the Court agrees that Plaintiffs claims cut only at national origin discrimination, the Court **GRANTS** Defendants' motion to dismiss.

### 1. Section 1981 does not protect against national origin discrimination

By its text, § 1981 provides the same rights to contract to "[a]ll persons" as those enjoyed by "white citizens." The statute's plain language thus speaks only in terms of race and citizenship status. So while § 1981 protects against race[1] and alienage discrimination,[2] it does not extend to discrimination based on national origin. *See Tippie v. Spacelabs Meds., Inc.*, 180 F. App'x 51, 56 (11th Cir. 2006) ("[S]ection 1981 applies to claims of discrimination based on race, not national origin."). The question then becomes what kind of discrimination Plaintiffs pled.

---

[1] *See Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 473 (11th Cir. 1999).

[2] *See, e.g., Anderson v. Conboy*, 156 F.3d 167, 171 (2d Cir. 1998); *Wright v. Southland Corp.*, 187 F.3d 1287, 1306 n.12 (11th Cir. 1999) (noting in dicta that "[r]efusing to hire an individual on the basis of alienage is illegal under . . . § 1981.").

3

### 2. Plaintiffs pled only claims of discrimination based on national origin

The class of plaintiffs here consists of several different races—black, white, and Hispanic. *See* ECF No. 1 at 2-3. Despite the racial diversity, all plaintiffs are American citizens. The H-2A workers, on the other hand, are all Mexican nationals of Hispanic descent. *Id.* at 8-11. Plaintiffs' § 1981 claims stem from Defendants failure to offer Plaintiffs "the preferable wage rate available under the H-2A job order" paid to Mexican workers. *Id.* at 8.

Plaintiffs also allege that Defendants based the denial of H-2A wages "upon Plaintiffs' race and/or lack of alienage." *Id.* at 19. But this is nothing more than a conclusory allegation that the Court cannot consider in deciding a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Such conclusions "are not entitled to the assumption of truth" given factual allegations. *Id.* Although Plaintiffs sufficiently allege wage discrimination, they plead no facts to support their conclusion that race or alienage undergirded Defendants' discrimination.

Plaintiffs contend they allege both race and alienage discrimination at paragraphs 45-55, 68-72, 87-88, and 91 of their complaint. ECF No. 19 at 3. None of the cited paragraphs refers in the slightest to race or alienage. Paragraph 91, for example, states that "[p]laintiffs' purchase of food, drinks, and/or cigarettes further reduced their wages below minimum wage." ECF No. 1 at 14. At best, the cited material bolsters Plaintiffs' claims of wage discrimination. But at no point do they contribute to stating a claim for discrimination in contract on the basis of race or alienage.

A more fundamental flaw with Plaintiffs' § 1981 argument lies in the apparent assertion that discrimination against American citizens, in America, constitutes discrimination based on alienage. Although § 1981 permits claims of alienage discrimination, *see Wright*, 187 F.3d at 1306 n.12, and claims of reverse racial discrimination against whites, *see McDonald v. Santa Fe Trails Transportation Co.*, 427 U.S. 273 (1976), it does not permit claims of reverse alienage discrimination of the type Plaintiffs have pled. "Discrimination against whites is racial discrimination, but (in America) discrimination against Americans can never be discrimination based on *alienage*" because American citizens have no status as aliens upon which the discrimination can be based. *Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F.2d 731, 735 (5th Cir. 1986). Such discrimination "can only be based on national origin" and therefore is unprotected by § 1981. *See Tippie*, 180 F. App'x at 56.

Plaintiffs failed to plead facts supporting their conclusion that Defendants' alleged discrimination occurred because of race or alienage. Regardless, a claim of alienage discrimination by Americans, in America, dies on the proverbial vine no matter the

4

facts pled. Defendants' motion to dismiss is accordingly **GRANTED**.

### B. Certification Of An FLSA Collective Action

The FLSA authorizes plaintiffs to bring a collective action on behalf of similarly situated employees. 29 U.S.C. § 216(b).[3] Section 216(b) class certification, unlike that under Federal Rule of Civil Procedure 23, requires putative class members to opt in to the 216(b) action by providing the court written consent in order to become a class member "and be bound by the outcome of the action." *Id.*; *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001).

To facilitate the certification process, courts use a two-tiered approach. *Hipp*, 252 F.3d at 1218 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)). The first tier of certification is the notice stage, at which point the Court determines whether notice of the pending action should be given to putative class members. *Id.* The Court applies a "fairly lenient standard" to determining the propriety of notice and typically grants conditional certification of a collective action. *Id.* The second tier of certification, generally precipitated by a defendant's motion for decertification, usually occurs after discovery is largely complete. *Id.* At that time the Court, applying a more stringent standard, determines whether the class members are in fact similarly situated. *Id.*

This case resides at the earlier notice stage of FLSA certification. At this stage, the Court conducts a preliminary inquiry into whether other employees (1) are similarly situated with regard to job requirements and pay provisions and (2) wish to opt in to the pending suit. *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). If the Court finds both considerations met, conditional certification follows.

Plaintiffs argue that (1) their submission of seventeen consent to sue forms demonstrates other employees wish to opt in; and (2) other farm workers are similarly situated to Plaintiffs because they share job requirements and pay practices. ECF No. 20 at 6-8. Defendants dispute primarily Plaintiffs' similarly situated assertion, arguing that (1) Plaintiffs cannot include H-2A workers in their proposed class; (2) a settlement between Stanley Farms and the Department of Labor ("DOL") bars a portion of the proposed class from bringing suit; (3) the proposed class has several different primary employers; and (4) the inquiry into minimum wage violations requires individualized inquiries and is thus inappropriate for class treatment. ECF No. 30 at 2.

#### 1. Plaintiffs have demonstrated other employees wish to opt in

Plaintiffs' submission of seventeen affidavits from other employees, *see* ECF

---

[3] "An action to recover the liability prescribed in [29 U.S.C. §§ 206 (governing minimum wage standards)] may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

5

Nos. 7; 10, is more than enough to show a desire by non-parties to opt in. *See Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1277 (M.D. Ala. 2004) (noting that courts affirm the existence of other employees who wish to opt in based on affidavits); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 362 (M.D. Ala. 1999) (affirming presence of opt in plaintiffs based on fifteen affidavits). Satisfied by Plaintiffs' evidence on this prong of the conditional certification inquiry,[4] the Court turns to an examination of whether other farm workers are similarly situated to Plaintiffs.

### 2. Plaintiffs have shown that other employees are similarly situated

The similarly situated requirement of § 216(b) "is not particularly stringent."[5] *Hipp*, 252 F.3d at 1214. In fact, "[p]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (internal quotations omitted).

Plaintiffs have made such a showing as to job requirements and pay provisions. As Plaintiffs note, they "and their co-workers were all farmworkers." ECF No. 20 at 8. They all "harvested and planted produce." *Id.* And all of Stanley's farm workers—Plaintiffs and their coworkers—received piece rate pay under a payroll system Stanley controlled. *See id.*; ECF Nos. 1-2 at 2; 1-3 at 4; 1-4 at 4; 1-5 at 5. Plaintiffs and the proposed class members therefore are sufficiently similarly situated to justify conditional certification of a collective action under § 216(b). *See, e.g., Monroe v. FTS USA, LLC*, 257 F.R.D. 634, 638 (W.D. Tenn. 2009) (finding proposed class similarly situated to plaintiffs where all employees performed "the same job functions" and received pay under the same piece rate compensation scheme).

Defendants make several arguments opposing certification on grounds that other employees are not similarly situated to Plaintiffs. First, Defendants argue that crew leaders, not Stanley Farms, employed farm workers and thus that those workers are only similarly situated to other workers employed by the same crew leader. *See* ECF No. 30 at 9. But whether or not a crew leader or Stanley Farms constituted the farm workers' primary employer, Stanley Farms hired the crew leaders and prepared the payroll for all farm workers. ECF No. 13 at 5-6. Plaintiffs' allegations, moreover, are not that individual crew leaders failed to pay the minimum wage; rather, Plaintiffs contend that piece rate pay—a system instituted by Stanley Farms—itself resulted in illegal pay rates because Stanley failed to account for all hours worked during its preparation of payroll. *See* ECF No. 20 at 9. The Court will not deny conditional certification because a supervisory layer stands between the farm workers and Stanley Farms.

---

[4] Defendants argue that the lack of any affidavits from H-2A workers undermines Plaintiffs' showing that people wish to opt in. ECF No. 30 at 3. Whether or not H-2A workers submitted affidavits, seventeen other farm workers swear they wish to opt in. That's enough at this stage of the game. Later, after discovery is largely complete, Defendants may re-raise this point if they move to decertify the collective action or limit the scope of the proposed class.

[5] By comparison, the common question requirement for joinder under Federal Rule of Civil Procedure 20 is more stringent than the similarly situated requirement of § 216(b). *See Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).

6

Second, Defendants claim a settlement between Stanley Farms and the DOL bars claims pertaining to unpaid wages between March 31, 2012 and May 5, 2012 for fifty-four farm workers, including named plaintiffs Maurice Burley and Felicia Gillis. ECF No. 30 at 10. Defendants correctly note that the DOL may supervise payment of unpaid minimum wages from employers to employees and that the "agreement of any employee to accept such payment shall upon full payment constitute a waiver by such employee of any" private right of action to sue for unpaid wages. 29 U.S.C. § 216(c). But merely sending out checks, even if employees cash those checks, is insufficient to show agreement by employees to waive their rights under the FLSA. *See Walton v. United Consumers Club*, 786 F.2d 303, 304-05 (7th Cir. 1986).

Absent some sort of affirmative waiver, like a signed WH-58 form,[6] employer payment under a DOL settlement does not erase an employee's right to sue. *Id.* at 305. And Defendants have shown no such agreement on the part of either Gillis or Burley, or, for that matter, any of the fifty-four farm workers the DOL settlement encompasses. The settlement therefore does not affect the ability of farm workers to participate in this suit.

Lastly, Defendants argue that "this case is unsuitable for collective action status" because "an individualized inquiry is necessary to determine whether an employee was not properly paid." ECF No. 30 at 14. Perhaps the inquiry is fundamentally individual. But the commonality required for conditional certification of an FLSA collective action is not on par with that required of a class action under Federal Rule of Civil Procedure 23. *See Grayson*, 79 F.3d at 1096 (noting that the similarly situated requirement for FLSA collective actions is "considerably less stringent than the requirement of [Rule 23(b)(3)] that common questions predominate."). At this stage of the proceedings, Plaintiffs only need show similarity in job duties and pay provisions, which they have done. *Id.*

For purposes of conditional certification, Plaintiffs have shown that other farm workers have similar job duties and pay provisions to those Plaintiffs complain about. Because Plaintiffs have also shown the existence of farm workers who wish to opt in to this action, the Court conditionally certifies Plaintiffs' FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b). Plaintiffs may represent any class member who opts in to this case unless and until Defendants successfully move for decertification.

Before turning to Plaintiffs' motion to amend, the Court must first address the terms of Plaintiffs' proposed notice, and Plaintiffs' requests that the Court (1) order Defendants "to produce the names and last known permanent addresses of all potential opt-in plaintiffs," and (2) grant Plaintiffs' counsel four months from the date Defendants produce names and addresses to distribute notice to potential opt in plaintiffs. ECF No. 20 at 1.

---

[6] WH-58 forms are the DOL's official release form. *See* ECF No. 34-1.

7

### 3. *Miscellaneous relief associated with conditional certification*

Plaintiffs proposed notice is materially identical to that approved by the Court in *Ojeda-Sanchez v. Bland Farms*, No. 6:08-cv-96, ECF No. 103-1. The Court can discern no reason why that notice would be inappropriate in this case and so approves Plaintiffs' proposed notice.

Given the conditional certification of Plaintiffs' FLSA claims, and the Court's finding that notice is appropriate, the Court also *GRANTS* Plaintiffs other requested relief. The Court *ORDERS* Defendants to provide Plaintiffs' counsel with the full names, last known permanent addresses, and the last four digits of the social security numbers for all farm workers employed by Defendants from 2010-2012 within thirty days of this Order. Plaintiffs' counsel has 120 days from the receipt of contact information from Defendants to provide notice to potential opt-in plaintiffs.

### C. Plaintiffs' Motion To Amend

Plaintiffs seek leave to join several opt in plaintiffs as parties to this case, as well as correct some minor inaccuracies and typos in the complaint. *See* ECF No. 42. Defendants object to the proposed amendment primarily on grounds that it does nothing to cure the deficiencies in Plaintiffs' § 1981 claims. ECF No. 44. Although Defendants are correct that the amended complaint's § 1981 count continues to fail to state a claim, the Court nevertheless *GRANTS* Plaintiffs' motion.[7]

Federal Rule of Civil Procedure 15(a)(2) requires parties to seek leave of court to amend complaints when twenty-one days from service of a responsive pleading or motion to dismiss have passed, whichever is earlier. Courts "should freely give leave when justice so requires." *Id.*

The amendments Plaintiffs seek do not cut at the substantive allegations in the original complaint. The opt in plaintiffs whose joinder Plaintiffs request do not change the racial or nationality mix critical to the Court's analysis of Defendants' motion to dismiss. And all other amendments are minor, addressing matters that do not bear on either of the two motions resolved earlier in this Order.

So, Plaintiffs' motion to amend is *GRANTED*, but Count III, for the same reasons count III of the original complaint failed, fails to state a claim and so is *DISMISSED*.

### V. CONCLUSION

Plaintiffs fail to state a claim under 42 U.S.C. § 1981 because that statute does not protect against discrimination on the basis of national origin and because Plaintiffs pled no facts supporting racial or alienage discrimination. Defendants' motion to dismiss, ECF No. 15, is *GRANTED*. Count III of Plaintiffs' complaint is *DISMISSED*.

Plaintiffs' motion for conditional class certification of their FLSA claims fares better because it demonstrates that potential

---

[7] Plaintiffs recently filed a motion for extension of time to reply to Defendants' response to the motion to amend. ECF No. 45. The Court sees no value in delaying adjudication of the motion to amend in favor of more briefing. The issues involved are not complex and more ink need not be spilled. The motion for extension is *DENIED*.

opt in plaintiffs wish to join this suit and that those potential parties are similarly situated to the named plaintiffs. Plaintiffs' motion to certify, ECF No. 20, therefore is **GRANTED**. Plaintiffs proposed notice is **APPROVED** and Defendants are **ORDERED** to provide last known permanent addresses, full names, and the last four digits of the social security numbers for all farm workers they employed from 2010-2012. Plaintiffs will have 120 days from receipt of that information within which to provide potential opt-in plaintiffs with the proposed notice.

Finally, Plaintiffs motion to amend, ECF No. 42, is **GRANTED** because the proposed changes to the complaint do not cause Defendants any prejudice. Count III of the amended complaint, however, fails to state a claim and remains **DISMISSED**.

This 16th day of October 2013.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

9