UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| SHERRY TOMASON, MAURICE BURLEY, ANTONIO POLKE, FRANK WASHINGTON, and others similarly situated <br><br> Plaintiffs, <br><br> TONY ANDERSON, TAMMIE ANTHONY, ERIC COOK, JUSTIN DIXON, GEORGE FISHER, ANTONIO GAFFNEY, MICHAEL VALDEZ GARCIA, FELICIA MARIE GILLIS, MARVIN GILLIS, JR., JAMES GREEN, DAMIAN JONES, MICHAEL KENDRICK, BRIAN MARTIN, BRIAN MOBLEY, BRENDA MOULTRIE, NICHOLAS POLKE, LINDA POPE, FELICISA ROGERS,ORLANDO SHELL, and CHERYL WRIGHT <br><br> Opt-in Plaintiffs, <br><br> vs. <br><br> R.T. STANLEY, J.R., BRIAN STANLEY, VINCE STANLEY, TRACY STANLEY, STANLEY FARMS, LLC, and STANLEY FARMS PARTNERSHIP, <br><br> Defendants. | Civil Action No.: 6:13-cv-42 |

**SECOND AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

1.     Plaintiffs and others similarly situated are migrant and seasonal farm workers who

worked for Defendants' farm operations in and around Toombs County in 2010,

2011, and 2012. Plaintiffs and others similarly situated were paid for their planting

and harvesting work on a piece-rate basis and their wages were not supplemented to

meet minimum wage. Plaintiffs and others similarly situated were also not offered

compensation offered the Hispanic, foreign workers they worked alongside.

Plaintiffs and others similarly situated bring claims under the Fair Labor Standards

Act, the Migrant and Seasonal Agricultural Workers Protection Act, 42 U.S.C. §

1981, and Georgia contract law to correct these unlawful employment practices.

2.     Plaintiffs and others similarly situated seek their lost and unpaid wages; liquidated

damages; actual, incidental, consequential, compensatory damages, and punitive

damages; pre- and post-judgment interest, reasonable attorneys' fees and costs, and

declaratory and injunctive relief.

## I.     JURISDICTION AND VENUE

3.     This Court has jurisdiction of this action pursuant to:

a.     28 U.S.C. § 1331 (Federal Question);

b.     29 U.S.C. § 1337 (Interstate Commerce);

c.     29 U.S.C. § 1854(a) (AWPA); and

d.     28 U.S.C. § 1343 (Civil Rights).

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), 29 U.S.C. § 1854(a),

and S.D. Ga. Local Rule 2.1, because a substantial part of the claims arose in the

Southern District of Georgia and because the Defendants reside there.

5.     This Court is empowered to grant declaratory relief pursuant to 28 U.S.C. §§ 2201

and 2202.

## II.     PARTIES

6.     Plaintiffs Maurice Burley and Antonio Polke and Opt-in Plaintiffs Tony Anderson,

Tammie Anthony, George Fisher, Antonio Gaffney, James Green, Damian Jones,

Brian Martin, Brian Mobley, Brenda Moultrie, Nicholas Polke, Linda Pope, Felicisa Rogers, Orlando Shell, and Cheryl Wright are of United States national origin and citizenship (American) and African-American (black) and were seasonal agricultural worker as defined by the AWPA. 29 U.S.C. § 1802(10)(A).

7. Opt-in Plaintiff Michael Garcia is of United States national origin and citizenship (American) and Hispanic and was a seasonal agricultural worker as defined by the AWPA. 29 U.S.C. § 1802(10)(A).

8. Plaintiff Sherry Tomason and Opt-in Plaintiffs Eric Cook, Justin Dixon, Michael Kendrick, Felicia Gillis, Marvin Gillis, Jr., and Brian Martin and are of United States national origin and citizenship (American) and Caucasian (white) and were seasonal agricultural worker as defined by the AWPA. 29 U.S.C. § 1802(10)(A).

9. Plaintiff Frank Washington is of United States national origin and citizenship (American) and African-American (black) and was a migrant agricultural worker as defined by the AWPA for the 2010 and 2011 seasons and a seasonal agricultural worker for the 2012 season. 29 U.S.C. § 1802(8)(A) and 1802(10)(A).

10. Plaintiffs' and Opt-in Plaintiffs' consents to sue are attached as Exhibit A to the original complaint in this action or were filed as Documents 7, 10, 29, and 40 in the Court Docket in this case, or through subsequent filings.

11. Defendants are individuals residing in or around Lyons, Georgia.

12. Defendant R.T. Stanley, Jr., is a member of Defendant Stanley Farms, LLC, and a partner in the Stanley Farms partnership, and may be served with process at 288 Stanley Lodge Drive, Lyons, GA 30436.

13. Defendant Brian Stanley is a member of Defendant Stanley Farms, LLC, and a partner in the Stanley Farms partnership, and may be served with process at 251 Bud Clifton Road, Lyons, GA 30436.

14. Defendant Vince Stanley is a member of Defendant Stanley Farms, LLC, and a partner in the Stanley Farms partnership, and may be served with process at 285 Mallard Pt., Lyons, GA 30436.

15. Defendant Tracy Stanley is a member of Defendant Stanley Farms, LLC, and a partner in the Stanley Farms partnership, and may be served with process at 231 Stanley Retreat Drive, Lyons, GA 30436.

16. Defendant Stanley Farms, LLC, may be served with process through its registered agent, Defendant R.T. Stanley, Jr., and Defendant Stanley Farms, a general partnership, may be served with process through any of its four partners: R.T. Stanley, Jr., Brian Stanley, Vince Stanley, and Tracy Stanley.

17. Defendants employed Plaintiffs Maurice Burley, Sherry Thomason, and Frank Washington and Opt-in Plaintiff Nicholas Polke in the 2010 spring onion harvest season.

18. Defendants employed Plaintiffs Maurice Burley and Sherry Tomason and Opt-in Plaintiff Brian Martin in the 2010 fall onion planting season.

19. Defendants employed Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington and Opt-in Plaintiffs Tammie Anthony, James Green, Damian Jones, Brian Martin, Brian Mobley, Brenda Moultrie, Nicholas Polke, Linda Pope, Felicisa Rogers, Orlando Shell, and Cheryl Wright in the 2011 spring onion harvest season.

20.     Defendants employed Plaintiffs Maurice Burley, Sherry Tomason, and Frank Washington and Opt-in Plaintiffs George Fisher, Michael Garcia, Brian Martin, and Cheryl Wright in the 2011 fall onion planting season.

21.     Defendants employed Plaintiffs Maurice Burley, Sherry Tomason, and Frank Washington and Opt-in Plaintiffs Eric Cook, Justin Dixon, Antonio Gaffney, Felicia Gillis, Marvin Gillis, Jr., Michael Kendrick, Brian Martin, Brian Mobley, Linda Pope, and Felicisa Rogers in the 2012 spring onion harvest season.

22.     Defendants employed Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington and Opt-in Plaintiffs Michael Garcia, Brian Mobley, and Cheryl Wright in the 2012 fall onion planting season.

23.     At all times relevant to this action, Defendants had the power to hire and fire Plaintiffs and others similarly situated and had control over their conditions of employment.

24.     Defendants hired crewleaders who recruited and supervised Plaintiffs and others similarly situated. During the relevant time periods the Defendants employed as crewleaders Ramon and Joe Quintero, Henry Hinojosa, Joel Salgado, and Jose Barco.

25.     Defendants determined the amount of harvesting to be done each day and determined the start time at which harvesting could begin.

26.     Defendants own or lease the property on which Plaintiffs and others similarly situated worked.

27.     Defendants determine wages by setting the piece-rate the crewleader can pay.

28.  Defendants advance money to the crewleaders because the crewleaders are not financially self-sustaining businesses.

29.  Defendants supplied tools and supplies to the crewleaders either directly or through advancing money for the purchase of tools and supplies.

30.  Defendants prepared the payroll, including paystubs, and paid the workers.

31.  Planting and harvesting onions and other produce was an integral part of the Defendants' business of growing, marketing, and selling produce.

32.  Defendants were employers within the definition of the Fair Labor Standards Act because they suffered or permitted Plaintiffs and others similarly situated to work and Plaintiffs and others similarly situated were dependent on them for their wages as a matter of economic reality.

33.  Defendants were agricultural employers within the meaning of 29 U.S.C. § 1802 because they owned or operated a farm and hired and employed migrant and seasonal farm workers.

34.  Defendants were employers as defined by the H-2A regulations, 20 C.F.R. § 655.103(b), of H-2A workers and workers in corresponding employment, including Plaintiffs and others similarly situated, because they had a place of business in the U.S., a means to be contacted for employment, had the ability to control the work of H-2A workers, Plaintiffs, and others similarly situated, and had a valid Federal Employer Identification Number.

35.  Defendants R.T. Stanley, Vince Stanley, Brian Stanley, and Tracy Stanley are day-to-day managers with operational control over the agricultural operations doing business as Stanley Farms.

36.   At all times relevant to this action, Defendants were engaged in the packing and production of produce in and around Toombs County, Georgia, for sale in interstate commerce.

### III.   THE H-2A PROGRAM AND PLAINTIFFS' EMPLOYMENT CONTRACTS

37.   An agricultural employer in the United States may import H-2A workers if the United States Department of Labor ("U.S. DOL") certifies that (1) there are not enough U.S. workers to perform the job and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1). These provisions, along with the implementing regulations, are commonly referred to as the "H-2A program."

38.   Employers requesting H-2A workers must file a temporary labor certification application with the U.S. DOL's Employment and Training Administration. 20 C.F.R. § 655.130. The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. § 655.122 and 20 C.F.R. § 653.501. 20 C.F.R. § 655.121(a)(3). The job order contains the terms to be offered to both foreign H-2A workers and U.S. workers. *See* 20 C.F.R. § 655.122(a).

39.   A job order must contain all material terms and conditions of employment and is reviewed by the state and federal DOL to ensure the terms offered are the prevailing terms in the industry. 20 C.F.R. § 653.501(d)(3) and (4).

40.   Where an agricultural employer seeks foreign workers under the H-2A program, the terms of the job order establish the minimum terms and conditions for employment for all agricultural workers similarly employed.

41.     To receive H-2A workers, housing must be provided at no cost to H-2A workers and those workers in corresponding employment who are not reasonably able to return to their residence within the same day. 20 C.F.R. § 655.122(d).

42.     An employer using H-2A workers must offer U.S. workers no less than the same benefits, wages, and working conditions that it offers to H-2A workers and must not impose any restrictions or obligations on U.S. workers that it does not impose on H-2A workers. 20 C.F.R. § 655.122(a).

43.     At all times relevant to this action, Plaintiffs and others similarly situated were "U.S. workers" as defined by 20 C.F.R. § 655.103(b).

44.     The 2010 job orders offered a wage rate of $9.11 per hour. The 2011 job orders offered a wage rate of $9.12 per hour. The 2012 job orders offered a wage rate of $9.39 per hour.

## IV.     STATEMENT OF FACTS

45.     In each season relevant to this complaint, Defendants imported at least 39 Hispanic workers of Mexican national origin ("Mexican workers") under H-2A job orders for planting and harvesting vegetables.

46.     For the Fall 2010 season, Defendant R.T. Stanley, Jr., signed a letter supporting an application for H-2A workers by crewleader Jose L. Barco and indicating the intent to contract Mr. Barco and his 40 workers for the time period October 25, 2010, through December 31, 2010. The letter became part of job order number GA7878404 for the period October 25, 2010, to December 31, 2010. A copy of the Fall 2010 job order is attached as Exhibit B to the original complaint in this action.

47.     Defendants also provided the housing for the job order, attached as Exhibit B to the
original complaint, fulfilling a necessary requirement for crewleader Jose Barco to
be able to receive H-2A workers.

48.     Plaintiffs Maurice Burley, Sherry Tomason, and Opt-in Plaintiff Brian Martin
worked alongside the Fall 2010 H-2A workers on Defendants' farm but were not
offered or paid the preferable wage rate available under the H-2A job order identified
as Exhibit B in violation of 20 C.F.R. § 655.122(a).

49.     For the Spring 2011 season, Defendant R.T. Stanley, Jr., signed a letter supporting an
application for H-2A workers by crewleader Jose L. Barco and indicating the intent
to contract Mr. Barco and his workers. The letter became part of job order number
GA 7916391 requesting 44 workers for the period April 1, 2011, to June 15, 2011. A
copy of the Spring 2011 job order is attached as Exhibit C to the original complaint
in this action.

50.     Defendants also provided the housing for the job order, attached as Exhibit C to the
original complaint, fulfilling a necessary requirement for crewleader Jose Barco to
be able to receive H-2A workers.

51.     Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington
and Opt-in Plaintiffs Tony Anderson, Tammie Anthony, James Green, Damian
Jones, Brian Martin, Brian Mobley, Brenda Moultrie, Nicholas Polke, Linda Pope,
Felicisa Rogers, Orlando Shell, Cheryl Wright, and Felicia Williams worked
alongside the Spring 2011 H-2A workers on Defendants' farm but were not offered
or paid the preferable wage rate available under the H-2A job order identified as
Exhibit C in violation of 20 C.F.R. § 655.122(a).

9

52.     For the Fall 2011 season, Defendant R.T. Stanley, Jr., signed a letter supporting an
application for H-2A workers by labor contractor Jose L. Barco. The letter indicated
the intent to employ Mr. Barco and 39 of his workers from September 15, 2011, to
January 15, 2012. The letter was incorporated into job order GA7961898, which
requested 99 foreign workers for the time period September 15, 2011, until January
15, 2012. A copy of this Fall 2011 job order is attached as Exhibit D to the original
complaint in this action.

53.     Plaintiffs Maurice Burley, Sherry Tomason, and Frank Washington and Opt-in
Plaintiffs George Fisher, Michael Garcia, Brian Martin, and Cheryl Wright worked
alongside the Fall 2011 H-2A workers on Defendants' farm but were not offered or
paid the preferable wage rate available under the H-2A job order identified as
Exhibit D in violation of 20 C.F.R. § 655.122(a).

54.     For the Spring 2012 season, Joel Salgado submitted a job order numbered
GA8002291 for the time period April 2, 2012, to July 21, 2012 for 88 foreign
workers under the H-2A program. A copy of that Spring 2012 job order is attached
as Exhibit E to the original complaint in this action.

55.     Defendant R.T. Stanley, Jr., signed a letter of support indicating the intent to hire
Labor Contractor Salgado and 50 of his H-2A workers for the time period April 1,
2012 until July 21, 2012. The letter became part of the job order attached as Exhibit
E to the original complaint.

56.     Defendant Stanley Farms was identified as the work site for the Spring 2012 job
order.

57.   Defendants also provided the housing for the Spring 2012 job order, described on the job order as "Stanley Dorms." This fulfilled a necessary requirement for crewleader Joel Salgado to be able to receive H-2A workers.

58.   Plaintiffs Maurice Burley, Sherry Tomason, and Frank Washington, and Opt-in Plaintiffs Eric Cook, Justin Dixon, Antonio Gaffney, Felicia Gillis, Marvin Gillis, Jr., Michael Kendrick, Brian Martin, Brian Mobley, Linda Pope, and Felicisa Rogers worked alongside the Spring 2012 H-2A workers on Defendants' farm but were not offered or paid the preferable wage rate available under the H-2A job order identified as Exhibit E in violation of 20 C.F.R. § 655.122(a).

59.   For the Summer and Fall of the 2012 season, Joel Salgado submitted a job order GA8025953 for the time period July 22, 2012, to December 31, 2012 for 74 foreign workers under the H-2A program.

60.   Defendant Stanley Farms was identified as the work site and Defendant R.T. Stanley, Jr., signed a letter supporting the application for H-2A workers and indicating he was hiring Joel Salgado and that Mr. Salgado would need 74 workers.  The letter became part of job order number GA 8025953. A copy of the Summer and Fall 2012 job order is attached as Exhibit F to the original complaint in this action.

61.   Defendants also provided the housing for the job order attached as Exhibit F to the original complaint fulfilling a necessary requirement for crewleader Joel Salgado to be able to receive H-2A workers.

62.   Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington and Opt-in Plaintiffs Michael Garcia, Brian Mobley, and Cheryl Wright worked alongside the Summer and Fall 2012 H-2A workers on Defendants' farm but were

not offered or paid the preferable wage rate available under the H-2A job order identified as Exhibit F in violation of 20 C.F.R. § 655.122(a).

63.    Plaintiffs and others similarly situated were transported to and from work in the Defendants' onion fields by crewleaders Joaquin "Joe" Quintero or Ramon Quintero.

64.    The Quinteros were engaged by the Stanley Defendants to recruit and transport agricultural workers for a fee. Neither of the Quintero crewleaders was licensed by the U.S. Department of Labor as a farm labor contractor nor authorized to transport workers. Additionally, crewleader Joe Quintero lacked a state-issued driver's license.

65.    The vehicle crewleader Joe Quintero used to transport workers did not have seats and seatbelts for each worker, causing some workers to ride to work on upturned buckets with no seatbelts.

66.    Crewleader Ramon Quintero transported workers in an open-bed pickup truck and often had workers ride in the back of the truck with no seats or seatbelts.

67.    Plaintiffs and others similarly situated were compensated on a piece-rate basis, being paid based on the number of feet they planted in the planting season and the number of buckets they filled in the harvest season.

68.    In the harvest season Plaintiffs and others similarly situated received a token for each bucket of onions they picked. At the end of the day Defendants' crewleaders counted the tokens of each Plaintiff and others similarly situated, less any tokens deducted for beverage and food charges, and based his or her pay on the number of tokens received in a week.

69.    Plaintiffs and others similarly situated were only paid the piece-rate regardless of the number of hours they worked, and their pay was not supplemented to average either

the federal minimum wage or the job order wage rate to meet the applicable minimum wage.

70.     Failing to supplement piece-rate wages resulted in Plaintiffs and others similarly situated receiving less than the average of the federal minimum wage and less than the job order wage rate for all hours worked in a work week.

71.     The wages of Plaintiffs and others similarly situated were reduced further below the applicable minimum wages when they were not compensated for time spent waiting during the onion harvest seasons for onions to dry in the morning or for tokens to be tallied at the end of the workday.

72.     In the 2010 and 2011 seasons, Defendants did not provide Plaintiffs and others similarly situated with paystubs that detailed their hours worked.

73.     Defendants occasionally provided weekly hours on 2012 paystubs but those records failed to record all hours worked and were thus inaccurate.

74.     Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington and Opt-in Plaintiffs Michael Garcia, Brian Mobley, and Cheryl Wright worked during the 2012 Fall onion planting season in Defendants' onion fields that had recently been sprayed with pesticides.

75.     Defendants' crewleaders, supervisors, and relatives sold food, drinks, alcohol, and cigarettes in the fields to Plaintiffs and others similarly situated in violation of law and/or above actual cost.

76.     In the harvest season, Plaintiffs and others similarly situated could pay for their purchases in the fields as described in Paragraph 75 by returning tokens they received for each bucket harvested.

77.     Plaintiffs Maurice Burley, Antonio Polke, Sherry Thomason, and Opt-in Plaintiffs
Tony Anderson, Justin Dixon, Antonio Gaffney, Felicia Gillis, Marvin Gillis,
Damian Jones, Michael Kendrick, Brian Martin, Brenda Moultrie, Nicholas Polke,
Linda Pope, Felicisa Rogers Orlando Shell, and Cheryl Wright were required to
purchase tools, including clippers and files, for their work harvesting onions.

78.     The deductions described in Paragraphs 75 through 77 brought the wages of
Plaintiffs and others similarly situated further below minimum wage.

79.     Plaintiffs and others similarly situated were engaged in corresponding employment
under the applicable H-2A job order by performing work that was included under the
H-2A job order and/or by working alongside the H-2A workers and working in the
same fields performing the same tasks as H-2A workers.

80.     Defendants offered H-2A workers the applicable AEWR wage, as detailed in
Paragraphs 45 through 62, and did not offer this wage to Plaintiffs or others similarly
situated.

81.     Defendants knew their Fair Labor Standards Act obligations prior to the start of the
2010 Fall season.

82.     Defendants had been previously investigated for violations of the Fair Labor
Standards Act by the U.S. Department of Labor.

83.     Plaintiffs sought to resolve the claims informally prior to filing suit.

84.     Labor Contractor Eddie Lewis Jorden was a recruiting agent for Defendants'
crewleaders Ramon and Joe Quintero.

85.     Labor Contractor Jorden through an agent recruited and transported Plaintiff Frank
Washington to Lyons, Georgia from South Carolina prior to the 2010 season.

86. Labor Contractor Jorden recruited and transported Plaintiff Frank Washington from Florida to Georgia prior to the 2011 season.

87. Neither Defendants, Ramon Quintero, or Joe Quintero, nor the agent of Labor Contractor Jorden provided Plaintiff Frank Washington with a written description of the terms and conditions of the job at the time of his recruitment.

## COUNT I

### AWPA WAGES & WORKING ARRANGEMENT

88. Plaintiffs and Opt-in Plaintiffs incorporate each of the allegations contained in Paragraphs 1 through 87 above by reference.

89. This Count sets forth claims for monetary damages, declaratory relief, and injunctive relief by Plaintiffs and Opt-in Plaintiffs against all Defendants for their violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA").

90. Plaintiffs Maurice Burley, Sherry Thomason, and Frank Washington and Opt-in Plaintiff Nicholas Polke assert this claim for the 2010 spring season.

91. Plaintiffs Maurice Burley, Sherry Tomason, and Opt-in Plaintiff Brian Martin assert this claim for the 2010 fall season.

92. Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington and Opt-in Plaintiffs Tammie Anthony, James Green, Damian Jones, Brian Martin, Brian Mobley, Brenda Moultrie, Nicholas Polke, Linda Pope, Felicisa Rogers, Orlando Shell, and Cheryl Wright assert this claim for the 2011 spring season.

93. Plaintiffs Maurice Burley, Sherry Tomason, and Frank Washington and Opt-in Plaintiffs George Fisher, Michael Garcia, Brian Martin, and Cheryl Wright assert this claim for the 2011 fall season.

94.   Plaintiffs Maurice Burley, Sherry Tomason, and Frank Washington and Opt-in

Plaintiffs Eric Cook, Justin Dixon, Antonio Gaffney, Felicia Gillis, Marvin Gillis,

Jr., Michael Kendrick, Brian Martin, Brian Mobley, Linda Pope, and Felicisa Rogers

assert this claim for the 2012 spring season.

95.   Plaintiffs Maurice Burley, Antonio Polke, Sherry Tomason, and Frank Washington

and Opt-in Plaintiff Michael Garcia, Brian Mobley, and Cheryl Wright assert this

claim for the 2012 fall season.

96.   The working arrangement between Plaintiffs and Opt-in Plaintiffs and Defendants

included both express and implied terms. Among those terms incorporated were that

the job would not be in violation of existing employment laws including the

requirement that U.S. workers not be employed on terms less favorable than those

offered to foreign workers, 20 C.F.R. § 655.122(a), and the Worker Protection

Standards regarding pesticide use, 40 C.F.R. § 170 *et seq*.

97.   The working arrangement also incorporated express terms laid out in the job orders

prepared for labor contractors Jose Barco and Joel Salgado and approved by

Defendants describing work at Defendants' operations in Paragraphs 46 through 62

above constituted a working arrangement between the Defendants and the Plaintiffs

within the meaning of the AWPA, 29 U.S.C. § 1822(c) and 1832(c) and its

interpreting regulations, 29 C.F.R. § 500.72.

98.   As set forth in Paragraphs 46 through 87, the Defendants violated the AWPA by:

a.   Failing to provide required disclosures to migrant agricultural workers,

including Plaintiff Washington;

    b.      Failing to provide paystubs or providing paystubs with incomplete or inaccurate pay details in violation of 29 U.S.C. § 1832(c)(2);

    c.      Failing to keep records of all compensable hours worked in violation of 29 U.S.C. § 1831(c);

    d.      Failing to pay Plaintiffs' and Opt-in Plaintiffs' wages when due by failing to pay the job order wage rate for all compensable hours worked in violation of 29 U.S.C. § 1822(a) and 1832(a);

    e.      Failing to take reasonable steps to determine that labor contractors were properly licensed for the activities for which they were engaged in violation of 29 U.S.C. § 1842;

    f.      Using or causing to be used transportation that was uninspected, unsafe, driven by unlicensed drivers, and not properly insured in violation of 29 U.S.C. § 1841(b);

    g.      Violating the AWPA working arrangement, 29 U.S.C. §1832(c), by violating the entry restrictions on pesticide use found at 40 C.F.R. § 170.112; and

    h.      Violating the AWPA working arrangement, 29 U.S.C. §1832(c), by failing to pay the wages contractually promised in the H-2A job order.

99.    The violations of the AWPA working arrangement were without justification.

100.    The violations of the AWPA and its attendant regulations set forth in this Count were the natural consequences of the conscious and deliberate actions of the Defendants and were intentional within the meaning of the AWPA.

101.    As a result of Defendants' violations of the AWPA and its attendant regulations as set forth in this Count, Plaintiffs and Opt-in Plaintiffs have suffered damages in an amount to be determined at trial.

## COUNT II

## FAIR LABOR STANDARDS ACT

102.    Plaintiffs and similarly situated workers who have filed consents to sue in this lawsuit incorporate each of the allegations contained in paragraphs 1 through 87 above by reference.

103.    This Count sets forth a claim by Plaintiffs and others similarly situated for damages for Defendants' violations of the FLSA pursuant to 29 U.S.C. § 216(b).

104.    As detailed in paragraphs 67 through 82 above, Defendants failed to pay Plaintiffs, and others similarly situated, at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, as required by 29 U.S.C. § 206(a).

105.    The violations of the FLSA resulted, in part, from Defendants' failure to provide or pay for tools, necessary expenses, as detailed in paragraph 77 above, which Plaintiffs and others similarly situated incurred primarily for the benefit or convenience of Defendants prior to or in their first week of work.

106.    The violations of the FLSA resulted, in part, from Defendants' failure to augment piece rate earnings when those earnings fell below an average of the applicable minimum wage for the work week.

107.    The violations of the FLSA resulted, in part, from Defendants' failure to pay
        Plaintiffs for time Plaintiffs were engaged to wait at the beginning and end of the day
        during the harvest seasons.

108.    Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA set
        forth in this Count, Plaintiffs and other similarly situated workers are entitled to
        recover the amount of their unpaid wages and an equal amount as liquidated
        damages for each workweek in which they were suffered or permitted to work at
        Defendants' operations and during which they earned less than the applicable
        minimum wage.

109.    Defendants' violations set out in this Count were willful within the meaning of the
        FLSA.

## COUNT III

## DISCRIMINATION IN CONTRACT

110.    Plaintiffs and Opt-in Plaintiffs incorporate each of the allegations contained in
        Paragraphs 1 through 87 above by reference.

111.    Plaintiffs and Opt-in Plaintiffs, members of a protected class, assert this claim
        pursuant to 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, against
        all Defendants.

112.    Defendants intentionally discriminated against Plaintiffs and Opt-in Plaintiffs in their
        employment contracts by imposing discriminatory terms of employment and denying
        them the benefits, privileges, terms, and conditions of the contractual relationship, by
        assigning work under the H-2A contract only to foreign workers, denying Plaintiffs
        wages provided to the foreign, Hispanic, Mexican workers, based upon Plaintiffs'

race and/or lack of alienage in favor of the foreign, Hispanic, Mexican workers as set forth in paragraphs 45 through 62.

113.    Defendants' actions violated the Plaintiffs and Opt-in Plaintiffs' rights to make and enforce contracts and receive full and equal benefit of the law as guaranteed by 42 U.S.C. § 1981.

114.    Plaintiffs' rights under 42 U.S.C. § 1981 to make and enforce contracts were clearly established at the time Defendants discriminated against Plaintiffs and Opt-in Plaintiffs.

115.    Defendants' conduct intentionally and impermissibly favored foreign, Hispanic, Mexican workers over Plaintiffs and Opt-in Plaintiffs in the making and enforcement of employment contracts in violation of 42 U.S.C. § 1981.

116.    As a direct result of Defendants' actions, Plaintiffs and Opt-in Plaintiffs were subjected to discriminatory terms and conditions of employment and have suffered substantial damages.

117.    Defendants exhibited oppression, malice, gross negligence, willful or wanton misconduct, or reckless disregard for the Plaintiffs' civil rights so as to entitle the Plaintiffs and Opt-in Plaintiffs to an award of punitive damages to punish Defendants for their conduct and to deter Defendants and others like them from such conduct in the future.

118.    Plaintiffs and Opt-in Plaintiffs seek all appropriate relief, including back pay, declaratory and injunctive relief, attorneys' fees and costs of this action pursuant to 42 U.S.C. § 1988, and damages, including compensatory and punitive damages, in an amount to be determined at trial.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

(a)  Under Count I:

1.      Declare that all Defendants have willfully violated the AWPA as specified above in paragraphs 88 through 101 above;

2.      Award Plaintiffs and Opt-in Plaintiffs the greater of his or her actual damages or statutory damages of $500 per violation for each violation of the AWPA.

3.      Enjoin all Defendants from further violations of the AWPA.

(b)  Under Count II:

1.   Grant judgment against Defendants and in favor of each Plaintiff and similarly situated worker who has filed a consent to sue this lawsuit in the amount of his or her respective unpaid wages as proved at trial, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b); and

2.   Award Plaintiffs and similarly situated workers who have filed consents to sue in this lawsuit their costs and attorneys' fees pursuant to 29 U.S.C. § 216(b).

(c)  Under Count III:

1.   Grant judgment against all Defendants and in favor of each Plaintiff and Opt-in Plaintiff in the amount of his or her respective back wages as proved at trial, plus prejudgment interest;

2.   Grant appropriate injunctive and declaratory relief, including a permanent injunction enjoining all Defendants, their officers, successors, assigns, and all

persons in active concert or participation with them, from engaging in alienage

discrimination or race discrimination and any other employment practice which

discriminates on the basis of alienage or race;

3.  Award punitive damages in an amount to be determined at trial;

4.  Award court costs, including discretionary costs;

5.  Grant an award of reasonable attorneys' fees;

(d) Award Plaintiffs and Opt-in Plaintiffs pre- and post-judgment interest as allowed by

law;

(e) Cast all costs upon Defendants; and

(f)  Award Plaintiffs and Opt-in Plaintiffs such further relief, at law or in equity, as this

Court deems just and proper.


Respectfully submitted this 14th day of February, 2014,


_____/s Dawson Morton_____
Dawson Morton
Georgia Bar No. 525985
Leah Lotto
Georgia Bar No. 940599
Lisa Krisher
Georgia Bar No. 429762
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:      (404) 463-1623

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have on this 14th day of February, 2014, electronically filed with the Clerk of the Court the foregoing SECOND AMENDED COMPLAINT and all attachments. The Court, using the CM/ECF system will send notification of the filing to:

J. Larry Stine
Ray Perez
Kathleen Jennings
WIMBERLY, LAWSON, STECKEL,
SCHNEIDER & STINE, P.C.
Suite 400, Lenox Towers
3400 Peachtree Road, N.E.
Atlanta, Georgia 30326
jls@wimlaw.com
rp@wimlaw.com
kjj@wimlaw.com

Counsel for Defendants

_____/s Dawson Morton_____
Counsel for Plaintiffs

23